# Signature Certificate

 Document Reference: D2322NJ8SLWAT9C24TZD5X


RightSignature
Easy Online Document Signing

2014-12-18 09:16:24 -0800    Document created by Jason Batansky (jbatansky@gmail.com). - 177.237.80.33

 This signature page provides a record of the online activity executing this contract.

Page 2 of 2

# EXHIBIT "C"



**GOODELL STRATTON EDMONDS & PALMER LLP**
Attorneys at Law · Established 1881

515 S Kansas Ave
Topeka, KS 66603
WWW.GSEPLAW.COM

T 785.233.0593
F 785.233.8870
E gsep@gseplaw.com

November 12, 2015

**SENT VIA CERTIFIED MAIL**
Jason Batansky
100 West Montgomery Ave. #5
Ardmore, PA 19003

RE:   Purchase of ResumetoInterviews

Dear Mr. Batansky:

I represent Mat and Sarah Overbaugh and their business, Ichabod Ice, LLC (hereinafter collectively referred to as "Overbaughs"). All future communications should be directed to me at the address stated above.

As you know, in or around December 2014, the Overbaughs purchased from you the assets of an Internet-based resume building business called ResumetoInterviews. Since closing the asset purchase transaction, the Overbaughs have learned that several material misrepresentations were made during the purchase process. These material misrepresentations are evidenced in the Asset Purchase Agreement (APA).

Pursuant to the terms of the APA, you agreed to

...indemnify and hold Buyer harmless from and against any damages, liabilities, losses and expenses (including, without limitation, reasonable fees of counsel) of any kind or nature whatsoever (whether or not arising out of third-party claims and including all amounts paid, in investigation, defense or settlement of . . . any of the following matters:

i.   Fraud, intentional misrepresentation or a deliberate or willful breach by Seller of any of their representations, warranties, or covenants under this Agreement . . . .

ii.   Any other breach of any representation, warranty, or covenant of Seller

---

PARTNERS
H. PHILIP ELWOOD
PATRICK M. SALSBURY
JOHN H. STAUFFER, JR.

N. LARRY BORK[3]
NATHAN D. LEADSTROM[1]
MIRANDA K. CARMONA
MARY E. CHRISTOPHER[1]

OF COUNSEL
ARTHUR E. PALMER[1]
GERALD J. LETOURNEAU
HAROLD S. YOUNGENTOB[2]

SPECIAL COUNSEL
TIMOTHY A. SHULTZ[4]

ASSOCIATES
RICHARD J. RAIMOND
ALISON J. ST. CLAIR
LISA M. BROWN
SARAH A. MORSE[5]

RETIRED
GERALD L. GOODELL
WAYNE T. STRATTON

DECEASED
ROBERT E. EDMONDS (1932-2001)
[1]ALSO ADMITTED IN MO
[2]ALSO ADMITTED IN MO & NY
[3]ALSO ADMITTED IN MO, NE, & OK
[4]ALSO ADMITTED IN MO, NE & MN
[5]ALSO ADMITTED IN GA

GOODELL, STRATTON, EDMONDS & PALMER, L.L.P.

Mr. Jason Batansky
ResumetoInterviews Asset Purchase
November 12, 2015
Page 2 of 4

_____

      iii.      under this Agreement . . . or by reason of any claim, action or proceeding asserted or instituted growing out of any matter or thing constituting a breach of such representations, warranties, or covenants.

Several representations were made to the Overbaughs, and thereby to Ichabod Ice, LLC. In Section 17 of the APA, you represented that you had good and marketable title to the assets being conveyed to the Overbaughs, which includes "[a]ll equipment and tools of the Business" and "[a]ll inventory and supplies of the Business used in the provision of services." However, one of the assets you sold the Overbaughs was a list of LinkedIn tips which were originally authored by a man named Kyle Reedy. Mr. Reedy posted this list of tips on www.somethingawful.com, a website you frequent, and you took the list and tried to pass it off as your own. You knew that the list was not your own work, and you knew that Mr. Reedy had not given you permission to use his work. However, you led the Overbaughs to believe the list was an asset you owned. As a result of your fraudulent actions, the Overbaughs were recently forced to pay a $500 settlement to Mr. Reedy for alleged copyright infringement related to use of the LinkedIn list. Pursuant to the terms of the APA, the Overbaughs are entitled to indemnification in the amount of $500 for their copyright infringement settlement with Mr. Reedy, as well as attorney fees incurred in settling the dispute.

You also represented to the Overbaughs that Dusting Duvet, your Something Awful account, was a business account that could be transferred to the Overbaughs' LLC as part of the purchase of ResumetoInterviews. There is no such thing as a business account on Something Awful. Further, only one person is permitted to use a forum account, and sharing your account information with another person is a bannable offense. Once the other forum members realized (1) Dusting Duvet was no longer Jason Batansky but had been transferred to a business entity, and (2) ResumetoInterviews was allegedly responsible for plagiarizing another forum participant's work, any goodwill that had been previously built up was destroyed and sales from the site plummeted. Despite your claim that your business had a diversified sales generation model, sales from Something Awful made up approximately 70% of ResumetoInterview's revenue. ResumetoInterview's sales for September 2015 are down 60% from what they were in September 2014 due to the issues with the Something Awful site. As a result of the loss of this significant revenue stream, the Overbaughs have incurred unexpected expenses associated with marketing what you had described as "a complete turn-key business."

You also represented to the Overbaughs that all independent contractors working for you prior to closing would remain with your company through the end of their contracts. However, approximately one month after closing, one of those independent contractors informed the Overbaughs that he planned to quit if the Overbaughs did not convert his status from an independent contractor to an employee. He told the Overbaughs that he gave you the same ultimatum in or around November 2014. Despite this knowledge, you affirmatively represented to the Overbaughs that all current independent contractor agreements would remain in place, and you gave no indication that any of the independent contractors was unhappy. There are obvious

GOODELL, STRATTON, EDMONDS & PALMER, L.L.P.

Mr. Jason Batansky
ResumetoInterviews Asset Purchase
November 12, 2015
Page 3 of 4

---

advantages to retaining independent contractors as opposed to hiring employees, and the Overbaughs reasonably relied upon your representation when deciding whether to purchase ResumetoInterviews. In order to retain this independent contractor, the Overbaughs were forced to convert him to an employee, which resulted in additional unexpected expenses of approximately $1,250 for payroll taxes and workers compensation—and these are not one-time expenses.

You breached the terms of the APA. Section 19 of the APA defines "breach" to include "[d]iscovery by the Buyer that any material representation or warranty by Seller was untrue when made at or prior to the Closing." Your untrue representations about ownership of business assets, the nature of your Something Awful account, and the relationship with independent contractors are all material to the transaction between you and the Overbaughs and constitute one or more breaches of the APA. According to the APA, the Buyer's optional remedies include recovery of any monies paid by Buyer pursuant to the APA and recovery of actual losses caused by the breach.

In addition to their breach of contract claims under the APA, the Overbaughs have viable claims for fraud, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. Your intentionally fraudulent—or at the very least, reckless—misrepresentations to the Overbaughs induced them to purchase ResumetoInterviews. You led them to believe they were purchasing a successful business with a diversified sales generation model when in reality they were purchasing a business built on plagiarism that derives a majority of its sales from a single source. They reasonably relied on your representations. Unfortunately, despite their best efforts at due diligence, they were unable to realize the falseness of the information you supplied until after closing because only then did they gain full access to the business assets.

The Overbaughs paid $217,500 for a business that is now worth nowhere near that. The represented income stream of the business has been irreparably damaged due to the true facts that were not fully disclosed and were misrepresented at or prior to Closing. Additionally, the Overbaughs have incurred $7,550 in unforeseen expenses, including settlement of a copyright infringement claim, payroll taxes, required worker's compensation insurance, and marketing expenses that have been incurred in order to minimize the damages and lost revenues; the incidental damages will only increase over time.

The material misrepresentations made to the Overbaughs constitutes a breach of the A[PA] [b]y its own terms. Paragraph 19.b.i. of the APA authorizes the Overbaughs to recover all mo[nies] [p]aid to you pursuant to the agreement, to "recover actual losses" and to "pursue any an[d all] [re]medies" otherwise available to them. Accordingly, demand is hereby made for $225,05[0. It] should be noted that the cost of attorney's fees are not factored into this demand, b[ut the] [Ov]erbaughs are entitled to those fees pursuant to the APA and will seek them as damages [if] [cour]t litigation is required. The Overbaughs, in an effort to resolve this matter without lit[igation]

GOODELL, STRATTON, EDMONDS & PALMER, L.L.P.

Mr. Jason Batansky
ResumetoInterviews Asset Purchase
November 12, 2015
Page **4** of **4**

_____

and to compromise their claims and resolve any and all issues arising from and in relation to the asset purchase and breach thereof, simply wish to rescind the agreement and recoup their out-of-pocket losses. Upon receipt of the full amount demanded, the Overbaughs will happily turn any and all assets that were the subject of the sale back over to you, and you can operate the business.

The aforementioned offer to resolve this matter and demand will remain open until 5:00 p.m. CST of the tenth business day following the date of this correspondence. Please contact me within ten (10) business days from the date of this letter to discuss payment demanded and return of assets to you. Should you fail or refuse respond within ten business days, you will leave the Overbaughs no alternative but to proceed with litigation. I look forward to hearing from you in the near future.

Sincerely,

Timothy A. Shultz
tshultz@gseplaw.com

GOODELL, STRATTON, EDMONDS & PALMER, L.L.P.

# EXHIBIT "D"



**Spadea, Lanard & Lignana**
**Attorneys at Law**

The Philadelphia Building
1315 Walnut Street, Suite 1532
Philadelphia, PA 19107

phone 215.525.1165 x101
fax 215.987.2272
nlanard@spadealaw.com

November 17, 2015

**VIA EMAIL & CERTIFIED MAIL**
Timothy A. Shultz, Esquire
Goodell, Stratton, Edmonds & Palmer LLP
515 S. Kansas Avenue
Topeka, KS 66603

Re: ResumetoInterviews

Dear Mr. Shultz:

I represent Jason Batansky. Your letter dated November 12, 2015 has been referred to me for response. Please direct all future communication for Mr. Batansky directly to me. My contact information appears above.

Your letter makes quite a number of representations without a lot of substantiation. Your clients claim fraud and misrepresentation, but have failed to in any way establish any proof of either. In reality, your clients are anxious to rescind the transaction solely due to their inability to make a profit from it; this is not my client's fault or responsibility. My client never guaranteed any revenues or profits. Per the terms of the Asset Purchase Agreement (APA), my client agreed to sell to your clients all of the assets listed in Exhibit "A" to the APA, along with telephone numbers, and the use of the name "ResumetoInterviews". That is what your client bought, as evidenced by the APA. Your client did not buy a promise or representation that the business and the assets would garner a certain revenue.

The representations that you list in your letter related to Dusting Duvet and Something Awful accounts are unfounded. My client never represented that these were business accounts (it is clear in the APA that my client ran the business as a sole proprietor in his name personally). My client represented that he had good title to the Assets (as defined in the APA) and that there were no liens on them and that they were transferable, all of which were true. Clearly you have no basis for your claims since there are no citations in your letter stating where the supposed representations by Mr. Batansky regarding the two accounts are stated. Similarly you indicate that Mr. Batansky represented that "all independent contractors working for you prior to closing would remain with your company through the end of their contracts." Where is this representation stated in the APA? Per paragraph 21 of the APA, "This Agreement contains the entire agreement of the parties and supersedes all prior oral or written agreements and understandings with respect to the subject matter, and it shall not be amended or modified in any

Spadea, Lanard & Lignana
Attorneys at Law

Page 2 of 2

way except by subsequent agreement executed in writing." Your clients signed the APA with this clause indicating that the only representations that were being made were those contained in the APA.

Solely out of the kindness of his heart, Mr. Batansky attempted several times last Summer to assist your clients with some of the issues they were having. He was doing that without charge and as a favor to your clients to help them. Your clients repeatedly rejected his suggestions and his assistance. It is sad that they now want to blame Mr. Batansky for their own business failures.

I hope this letter puts this matter to rest.

Sincerely,

*Nancy L. Lanard*

Nancy L. Lanard